No. 63.—AUGUSTUS G. NAGLE, plaintiff in error, *vs.* THE CITY COUNCIL OF AUGUSTA, defendant.

[1.] Where, by the charter of the city of Augusta, the City Council were vested with full power to make and establish such by-laws, rules, and ordinances, respecting streets, wagons, &c. that should appear to them requisite and necessary for the security, welfare, and convenience of the said city, not repugnant to the constitution or laws of the land: *Held*, that an ordinance, regulating the weight which should be carried on loaded wagons, over the streets of the city, was a valid and legal ordinance, and authorised by the charter of the city.

Certiorari, in Richmond Superior Court, decided by Judge Holt, September Term, 1848.

By the third section of the Act incorporating the city of Augusta, it was provided that the City Council "shall also be vested with full power and authority, from time to time, under their common seal, to make and establish such by-laws, rules, and ordinances, respecting the harbor, streets, public buildings, workhouses, markets, wharves, public houses, carriages, wagons, carts, drays, pumps, buckets, fire engines, the care of the poor, the regulation of disorderly people, negroes, and in general, every other by-law or regulation that shall appear to them requisite and necessary for the security, welfare, and convenience of the said city, or for preserving peace, order, and good government within the same."

On 26th April, 1848, the City Council passed an ordinance, providing that "no wagon, dray, or other vehicle, employed in the transportation of goods, wares, merchandize, or produce of any kind, shall be permitted to pass through any of the streets of the city, which shall carry a greater weight, exclusive of the weight of such wagon, dray, or other vehicle, than is allowed by this ordinance. The load of a four or six horse wagon shall not exceed five thousand pounds in weight. That of a two horse wagon shall not exceed two thousand five hundred pounds, and that of a dray shall not exceed fifteen hundred pounds in weight. *Provided, always*, that wagons, drays, and other vehicles, may lawfully exceed these weights, when their load consists of one article or package, or of wood, lumber, or brick, and *provided, also*, that all licensed drays may still continue to carry four bales of cotton.

"Any white person who shall be convicted of a violation of this ordinance, shall be fined in a sum not exceeding twenty dollars, for each and every such violation, &c."

Augustus G. Nagle, for two several violations of the above ordinance, was fined for each the sum of twenty dollars.

A certiorari was applied for on three grounds of error.

1st. That said ordinance was contrary to his constitutional and legal rights.

2d. That it transcended the authority of the City Council in the premises, and was not authorised by the charter of the city.

3d. That said ordinance made unjust and illegal discriminations between the rights of citizens in passing the public highways of the city.

Upon hearing the certiorari, the Court below dismissed the same, sustaining the validity of the said ordinance.

To which decision exceptions were filed, and the same is now alleged to be erroneous.

E. STARNES, and T. P. McGRATH, for plaintiff in error.

1st. The City Council have transcended their authority in the passage of the ordinance, as it is an act made to operate on individuals, and not for the public good of the city.  1 *Black. Com.* 126.  *(Def. of Civil Liberty,) See note, Ibid.   Con. of Geo. Hotchk.* 60.

2d. The ordinance may, therefore, be said to be contrary to the constitutional and legal rights of the plaintiff.

3d. The ordinance makes unjust and illegal discriminations in the rights of citizens to pass the public streets of the city.   12 *Mod. R.* 687.   1 *Kent Com.* 448.   1 *Bay*, 252.

A. J. MILLER, for the defendant in error.

The ordinance in question is legal and valid.   *Act of* 31*st Jan.* 1798.   1 *McMullvn's Rep.* 323.   1 *Richardson's Rep.* 364.   15 *Ohio Rep.* 625.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] Had the City Council of Augusta, the power and authority, under their charter and the laws of the land, to make the ordinance specified in the record?   We are of the opinion, they had such power and authority.   By the 22d section of the 1st article of the Constitution of this State, it is declared, " The General Assembly shall have power to make all laws and ordinances, which they shall deem necessary and proper, for the good of the State, which shall not be repugnant to this Constitution." *Prince,* 905.   The same provision was in the Constitution of 1789.  *Marbury and Crawford's Dig.* 15.   The General Assembly, having the power to make all laws and ordinances which they might

deem necessary and proper for the good of the State, on the 31st January, 1798, delegated to the City Council of Augusta, "full power and authority, from time to time, under their common seal, to make and establish such *By-Laws, Rules* and *Ordinances* respecting the *streets, wagons, carts, drays, &c.* that shall appear to them requisite and necessary, for the *security, welfare*, and *convenience* of the said city, or for preserving peace, order, and good government within the same; provided, such by-laws shall not be repugnant to the Constitution, or the laws of the land." *Marbury and Crawford's Dig.* 136. The ordinance complained of, regulates the weight which wagons, and other vehicles employed in the transportation of goods, wares, merchandise, or produce of any kind, shall carry through the streets of the city.

The streets of the city are to be kept in good repair at the expense of the corporation, and very heavy loaded wagons may reasonably be supposed to cut them up, and injure them more than wagons carrying less weight. The argument for the plaintiff in error, however, is, that the ordinance violates the Constitution, deprives him of a natural right, and makes an unjust discrimination between the citizens, who pass with their wagons over the streets of the city.

We have not been able to discover that the ordinance violates any provision of the Constitution. The General Assembly, as we have seen, had the power to make all laws and ordinances, which they might deem necessary and proper, for the good of the State. The charter of the city of Augusta, vests the City Council with full power and authority, to make and establish such by-laws, rules and ordinances, respecting the *streets, wagons, &c.* that shall appear to them requisite and necessary, for the *security, welfare*, and *convenience* of the city. Does this ordinance deprive the plaintiff in error of his natural right to travel over the streets of the city with his loaded wagon and team? Certainly not; but merely *regulates* the exercise of that right. It may be said, a man has the natural right to ride his horse over the streets of the city, but it will not be contended, we suppose, that he would have the right to ride his horse with such speed, as to endanger the security and lives of the citizens, who are constantly passing those streets. The true distinction, is, between an ordinance which operates as a *total exclusion*, or deprivation of the

right of the citizens, and one which *merely regulates* the exercise and enjoyment of it, for the benefit and security of the inhabitants of the city.

An ordinance which would operate as a total exclusion of the right of the citizen to pass over the streets of the city, with his loaded wagon and team, would be unreasonable and void, as against common right. But the ordinance in question, which merely *regulates* the exercise, and enjoyment of the right, is good and valid, and authorised by the charter of the city. *Village of Buffalo vs. Webster*, 10 *Wend. Rep.* 99. *Bush vs. Seabury*, 8 *John. R.* 419. Nor do we think the ordinance unjustly discriminates between the rights of the citizens, who wagon over the streets of the city. Those who haul brick, wood, and lumber are excepted, it is true, by the proviso of the ordinance, but nevertheless, it is general in its operation upon all the citizens, who may think proper to employ their wagons and teams, in hauling over the streets of the city. If the ordinance had imposed restrictions upon the citizens of a *particular* ward of the city only, or granted a *particular privilege* to one class of the citizens, not common to the whole body, then the ordinance might have been obnoxious to the charge of making an unjust discrimination between the citizens; but nothing of that character appears on the face of the ordinance; the proviso is as general in its operation as the ordinance itself.

Let the judgment of the Court below, be affirmed.