STATE, *ex rel.* Z. M. FLOYD, .v. R. H. NOEL, Chief of Police of the City of St. Petersburg.

169 So. 549.
Division B.
Opinion Filed July 20, 1936.

*Erle B. Askew* and *Osmond R. Bie,* for Petitioner;
*Carroll R. Runyon* and *Harry I. Young,* for Respondent.

BUFORD, J.—This is an original habeas corpus proceeding.

Petitioner avers that he is unlawfully restrained of his liberty by Chief of Police of the City of St. Petersburg and, in effect, avers that he was convicted in the Municipal Court of the violation of Section 9 of an Ordinance of the City of St. Petersburg, entitled:

"AN ORDINANCE REGULATING THE SALE OF BEVERAGES CONTAINING MORE THAN 3.2 PER CENTUM OF ALCOHOL BY WEIGHT IN THE CITY OF ST. PETERSBURG, PROVIDING PENALTIES FOR THE VIOLATION OF THE PROVISIONS OF THIS ORDINANCE; AND REPEALING ALL ORDINANCES OR PARTS OF ORDINANCES IN CONFLICT HEREWITH."

Section 9 of the ordinance is as follows:

"Section 9. It shall be unlawful for any person to sell, offer for sale, serve or dispense intoxicating beverages in the City of St. Petersburg, in any place or establishment licensed by the State of Florida or the City of St. Petersburg for the sale of intoxicating beverages between the hours of Ten (10) P. M. and Six (6) A. M. of the morning following."

Section 12 of the Ordinance provides as follows:

"Section 12. Hotels shall be excepted from the provisions of Section 9 of this ordinance to the extent that the said hotels shall be permitted to sell, serve and dispense intoxicating beverages until 12 P. M. on week days, provided that said hotels shall not sell, serve or dispense intoxicating beverages between the hours of 10 P. M. and 12 P. M. week days to other than their registered room guests."

Hotels are defined in the Act for the purposes therein contemplated as follows:

"*Hotels.* The term 'hotel' for the purpose of this Ordinance shall mean any establishment generally accepted as a hotel and having one hundred (100) rooms or more for accommodation of guests."

Chapter 16774, Laws of Florida, 1935, is the intoxicating liquor control statute of this State. The Act in terms provides:

"Nothing in this Act contained shall be construed to affect or impair the power or right of any incorporated town or city of the State hereafter to enact ordinances regulating the hours of business and locations of places of business, and prescribing sanitary regulations therefor, of any licensee hereunder within the corporate limits of such city or town" * * *

It is so well settled that no citation of authority is required to support the statement that a municipality exercising the powers inherent in municipal corporations may reasonably regulate the sale of intoxicating liquors and in providing such reasonable regulations may prohibit the sale of such liquors within certain hours and also may prohibit the sale of liquors within certain zones.

The only question presented in this case which the Petitioner is in position to require the Court to determine, and which the Court should determine, is whether or not the provisions of Section 12 above quoted created such a discrimination as to make the provisions of Section 9, above quoted, unenforceable insofar as the same applied to the sale of intoxicating liquors between the hours of 10 P. M. and 12 P. M.

To state the question otherwise, where a city ordinance prohibits the sale of intoxicating liquors by licensed dealers

between the hours of 10 P. M. and 12 P. M., but provides that such inhibition shall not apply to hotels licensed to sell intoxicating liquors and having 100 rooms or more when selling, serving or dispensing intoxicating beverages to their registered room guests, will such exemption of such hotels so selling, serving or dispensing such intoxicating liquors render the inhibition against the sale void because of the discrimination created by the exception?

We think the question must be answered in the negative.

In the case of *Ex Parte* Lewinsky, 66 Fla. 324, 63 Sou. 577, the petitioner was held under warrant charging him with violation of Chapter 6516, Laws of 1913, in that he sold intoxicating liquors to a female and also in that he had a side entrance and screens to his barroom, his place of business for the sale of intoxicating liquors. The Act contained a proviso to the effect that it should not be applicable to hotels having 100 rooms or more. It was asserted that the proviso constituted an arbitrary classification. In regard thereto the Court said:

"To strike down an Act as class legislation, requires the strongest of showings. In a sense all legislation is classification, and unless the classification is palpably arbitrary, without possible basis for the distinction made by the law-making power, the courts should not intervene.

"We may suggest as a reasonable basis for the classification, that in very large hotels the bar is an incident merely and that the hotel management, under constant supervision of the State, will see to it by reason of self-protection, that the bar is conducted in an orderly, decent manner, whereas in the smaller hotels the liquor business may be the principal and the hotel the incident. Where the dividing line may be placed is primarily for the decision of the Legislature, and it is not, nor from our knowledge of Florida as a State,

much frequented by winter tourists, can it decently be claimed that the lien is so placed as to apply to but few hotels. A smaller number of rooms might have subjected the State to the crying evil, so vigorously denounced by the press and public not many years ago supposedly produced by the so-called Raines law in the most populous State of the Union.

"We may add that the Act does not confer any privilege not theretofore enjoyed by hotels of a hundred rooms, but merely does not add to the former restrictions, and therefore, much of the argument addressed to the favoritism for that class does not apply."

Although that Act of 1913 has been repealed the law as enunciated in construing the provisions of that Act as it was then and the observations made by the Court in regard to the exemption of hotels having one hundred rooms or more is as applicable to the Ordinance here under consideration as it was to the legislative Act there under consideration.

In the recent case of State, *ex rel.* Bennett, v. Lee, opinion filed March 12, 1936, reported in 166 Sou. 565, we had under consideration the provisions of Section 12½ of Chapter 17257, Laws of 1935, which was as follows:

"Section 12½. No machines operated under the provisions of this Act shall be maintained or operated within 300 feet of any public school or church; provided, however, that this shall not apply to any machine operated or maintained in any hotel."

In that case we quoted the reasons given by the Attorney General for sustaining the classification, saying:

"1.   That hotels do not offer for sale, or sell goods, wares, merchandise or services that are purchased by any large section of the general public and hence, the general public do not congregate at or visit such places, whereas, the gen-

eral public do visit stores and other places of business and these machines tend to cause crowds to congregate at such places and such crowds would tend to disturb public worship.

"2. The school children do not generally frequent hotels while they do visit stores and other places of business in the vicinity of schools.

"3. That hotels do not generally attract groups of people and those people who are there are usually paying guests who are travelers and strangers and they are not likely to produce noise when operating the machines such as would be produced by a group of people who gather at the average store or other place of business, other than hotels, for the purpose of playing the machines.

"4. Generally the operation of these machines is a mere incident of the hotel business and the management, under constant supervision of the State through the Hotel Commission, will, as a matter of self-protection, see that the machines are operated in an orderly and decent manner."

And then we said:

"The state of facts thus outlined may reasonably be conceived to exist, and are sufficient to sustain the constitutional validity of the quoted statutory provision as against the attacks here made upon it.

"This conclusion is supported by the holding of this Court in *Ex Parte* Lewinsky, 66 Fla. 324, 63 So. 577, 50 L. R. A. (N. S.) 1156. See also, *In re* Kidd, 5 Cal. App. 159, 89 P. 987; Bloss v. Lewis, 109 Cal. 493, 499, 41 P. 1081; State of Ohio, *ex rel.* Lloyd, v. Dollison, 194 U. S. 445, 24 S. Ct. 703, 48 L. Ed. 1062; M. K. & T. R. Co. of Texas v. May, 194 U. S. 267, 24 S. Ct. 638, 639, 48 L. Ed. 971. In the last cited case, the late Justice HOLMES made this characteristic observation: 'When a State Legislature

has declared that, in its opinion, policy requires a certain measure, its action should not be disturbed, by the Courts under the Fourteenth Amendment, unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that Legislatures are ultimate gnardians of the liberties and welfare of the people in quite as great a degree as the courts.' "

We see no necessity to add anything further to the observations made in this regard in these two Florida cases and since the question seems to be definitely settled by the holdings of this Court in those cases, it is not necessary to cite authorities beyond this jurisdiction.

The Petitioner has suggested other alleged infirmities of the Ordinance, but he has not shown by his Petition that he is in position to complain of, or to have advantage of those provisions unless it be that the infirmity of the provisions referred to is such as to render the Ordinance entirely invalid, or invalid to such an extent that the provisions of Section 9 could not be enforced against the Petitioner. We have considered those alleged infirmities from this viewpoint and find nothing that will have the effect contended for by the Petitioner.

It must be borne in mind that the classification here under consideration is not a classification of persons, nor is it a classification of locations, but it is a classification of transactions. The Ordinance prohibits that transaction which is effectuated by the sale of intoxicating liquor by a licensed dealer to other than his registered room guests in his hotel having 100 rooms or more and as between the hours of 10

and 12 o'clock P. M., there is excepted from the provisions of the Act the transaction between the licensed dealer and his registered guest in his hotel having 100 rooms or more. Therefore, any person, firm or corporation operating a hotel of 100 rooms or more, and being a licensed liquor dealer, may sell, serve or dispense intoxicating liquors between the hours of 10 P. M. and 12 P. M. to his registered room guests in such hotel and thereby consummate a transaction not prohibited by the Ordinance; whereas, if such proprietor of such hotel holding liquor license should consummate a like transaction with a person other than a registered room guest in his hotel, such transaction would violate Section 9 of the Ordinance.

The reasons why the police power may be exercised in one case and withheld in the other have been fully pointed out in the cases hereinbefore cited.

For the reasons stated, the writ should be quashed and the Petitioner remanded to the custody of the Respondent.

So ordered.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.