Mr. James G. Yaeger County Attorney Lee County Post Office Box 398 Fort Myers, Florida 33902-0398
Dear Mr. Yaeger:
This is in response to your request for an Attorney General Opinion on the following questions:
 1. DOES A NONCHARTER COUNTY HAVE AUTHORITY TO REGULATE THE HOURS OF BOTTLE CLUBS, I.E., UNLICENSED PREMISES WHERE THERE ARE NO ALCOHOLIC BEVERAGE SALES TRANSACTIONS BEING MADE AND WHICH HAVE ON-PREMISE CONSUMPTION OF ALCOHOLIC BEVERAGES?
 2. IF THE ANSWER TO #1 ABOVE IS IN THE AFFIRMATIVE, CAN THE FIXING OF HOURS BE REGULATED THROUGH PROPER ZONING AMENDMENT PROCEDURES TO THE COUNTY ZONING REGULATIONS ESTABLISHING SAID HOURS OF ON-PREMISE CONSUMPTION?
 3. FURTHERMORE, CAN A NONCHARTERED COUNTY AMEND ITS OCCUPATIONAL LICENSE ORDINANCE TO INCLUDE A NEW LICENSE REQUIREMENT AND CATEGORY FOR BOTTLE CLUBS TO FURTHER REGULATE SAID UNLICENSED PREMISES THROUGH SAID LICENSE/PERMITTING PROCEDURE ON A LOCAL LEVEL?
 QUESTIONS ONE AND TWO
As your first two questions are interrelated they will be answered together.
Chapter 125, F.S., implements the provisions of s 1(f), Art. VIII, State Const., which gives noncharter counties the powers of self-government provided by general or special law. Section 1(f), Art. VIII, State Const., also authorizes the board of county commissioners of a noncharter county to enact ordinances, as prescribed by Ch. 125, F.S., which are not inconsistent with general law. See, Speer v. Olson, 367 So.2d 207, 210 (Fla. 1978). As provided in s 125.01(3)(b), F.S.:
 The provisions of this section shall be liberally construed in order to effectively carry out the purpose of this section and to secure for the counties the broad exercise of home rule powers authorized by the State Constitution.
The legislative and governing body of a county is empowered by Ch.125, F.S., to carry on county government and, to the extent such power is not inconsistent with general or special law this power shall include, but shall not be restricted to, inter alia, establishing, coordinating and enforcing zoning and such business regulations as are necessary for protection of the public. Section125.01(1)(h), F.S. See also, s 125.01(1)(w), F.S. (county governing body is empowered to `[p]erform any other acts not inconsistent with law which are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law').
In the case of Speer v. Olson, 367 So.2d 207 (Fla. 1978), the Florida Supreme Court stated that unless the Legislature has preempted a particular subject which relates to county government by either general or special law the county governing body has full authority to act through the exercise of home rule power by reason of the first sentence of s 125.01(1), F.S., which provides that `[t]he legislative and governing body of a county shall have the power to carry on county government.' Id., at 211. The court found that there was no statute, either general or special, authorizing or restricting the action taken by the county in that case (county proceeded under home rule powers to issue general obligation bonds to acquire sewage and water systems and to pledge net revenues from the operation of these facilities and ad valorem taxes levied within area for payment of bonds) and that therefore the county was authorized, pursuant to s 125.01(1), F.S., to proceed under its home rule power to accomplish this purpose.
There does not appear to be any specific statutory or constitutional provision authorizing the board of county commissioners to regulate the business hours for consumption of alcoholic beverages at unlicensed alcoholic vendor premises or `bottle clubs.' Cf., s 125.01(1)(o), F.S., which empowers the county governing body to `[e]stablish and enforce regulations for the sale of alcoholic beverages in the unincorporated areas of the county pursuant to general law,' (e.s.); s 562.14(1), F.S., providing in pertinent part that `[e]xcept as otherwise provided by county or municipal ordinance, no alcoholic beverages may be sold, consumed, served, or permitted to be served or consumed in any place holding a license under the division between the hours of midnight and 7 a.m. of the following day' (e.s.); and AGO's 73-197, 75-252. However, while there is no specific authority for the action contemplated here, neither is there a restriction on or prohibition against such regulation contained in any statutory provision or the Florida Constitution of which I am aware, nor has any such provision been brought to my attention. Therefore, utilizing the rationale of the Speer v. Olson case, it would appear that the home rule power extended to noncharter counties through s 1(f), Art. VIII, State Const., and s 125.01, F.S., would empower the Board of County, Commissioners of Lee County to regulate such `bottle clubs.'
In Patch Enterprises, Inc. v. McCall, 447 F. Supp. 1075 (M.D.Fla., 1978), a challenge to a county ordinance prohibiting establishments which dealt in alcoholic beverages from permitting the sale or consumption of alcoholic beverages on their premises between certain hours was initiated by the operators of a `bottle club.' The ordinance defined `establishments which deal in alcoholic beverages' to include `bottle clubs,' hotels, motels, restaurants and night clubs and a definition of `alcoholic beverages' was also provided. Among the issues raised by the plaintiffs in challenging the county ordinance were whether the ordinance unconstitutionally denied equal protection of the laws to the `bottle club' owners by including them in a prohibited classification that was unreasonably and arbitrarily discriminated against and whether the proscription of the ordinance was so unjustifiable and unreasonable as to constitute a denial of the due process rights of the plaintiffs. With regard to the equal protection argument, it was found that the ordinance did not define the class of persons whom it regulated by means of a suspect criteria. The court stated that `[i]t is an intrinsic power of state governments and their subdivisions, fortified by the federal Constitution's Twenty-first Amendment, to regulate the sale, distribution, importation, and use of alcoholic intoxicants, so long as that regulation does not irrationally and invidiously discriminate.' 447 F. Supp. at 1079. In addition, the court determined that in enacting socio-economic, general welfare legislation, states and their subdivisions are accorded a wide latitude of discretion to select implementing classifications. Patch Enterprises v. McCall, supra at 1079.
In considering the due process challenge brought by the `bottle club' owners against the county ordinance, the court set forth the test of substantive due process as being whether a state can justify the infringement of its legislative activity upon personal rights and liberties. A state has a broad scope of discretion in which to regulate the conduct of its citizens so long as the legislative activity does not encroach upon constitutional guarantees or conflict with federal statutory law. To withstand a due process challenge, the legislative activity in question need only be shown not to be arbitrary or unreasonable. If a legitimate interest of the state (or a subdivision thereof) is involved and the legislation aims to effect such interest and the legislation is a reasonably related means to achieve the intended end, it will be upheld. The legislative goals which the county asserted for enacting this ordinance were the protection of the safety and welfare of county residents. The court determined that the legislation is question was a reasonable means to achieve that goal. The court further found that there was no inconsistent or preemptive state law which would make the subject county ordinance ultra vires.
Therefore, it would appear that a noncharter county exercising its home rule power as provided by s 1(f), Art. VIII, State Const., and s 125.01, F.S., is empowered to regulate the consumption of alcoholic beverages at unlicensed alcoholic vendor business premises or `bottle clubs' by county ordinance if such legislation is directed to the goal of protecting the safety and welfare of county residents and if the classification of `bottle clubs' by the county commission is not arbitrary or unreasonable and that such regulation may but is not required to take the form of zoning ordinances. Cf., State v. Noel, 169 So. 549 (Fla. 1936); City of Miami Beach v. State, 129 So.2d 696 (Fla. 1961); Hardage v. City of Jacksonville Beach, 399 So.2d 1077 (1 D.C.A. Fla., 1981); AGO's 74-319, 74-362.
QUESTION THREE
Chapter 205, F.S., the `Local Occupational License Tax Act' provides, inter alia, that a county governing body may levy an occupational license tax for the privilege of engaging in or managing any business, profession or occupational within its jurisdiction. Such a tax may be levied pursuant to a resolution or ordinance by the governing body of the county. Section 205.032, F.S. The authority of a county governing body to levy an occupational license tax is subject to a number of conditions imposed pursuant to s 205.033, F.S., including a condition that such tax be based upon reasonable classifications and be uniform throughout any class. Section 205.033(1)(a), F.S.
I am aware of no statutory provision which would prohibit a noncharter county from levying an occupational license tax for the privilege of engaging in or managing a `bottle club' business within its jurisdiction. Therefore, I am of the view that a county may levy an occupational license tax on such businesses as long as the provisions of Ch. 205, F.S., are complied with and it meets the requirements of s 205.033(1)(a), F.S. Cf., Segal v. Simpson,121 So.2d 790, 792 (Fla. 1960) (`bottle clubs' are lawful business enterprises and as such may not be prohibited under the power to license).
In sum, it is my opinion unless and until legislatively or judicially determined otherwise that a noncharter county is empowered by s 1(f), Art. VIII, State Const. and s 125.01, F.S., to regulate the consumption of alcoholic beverages at unlicensed alcohol vendor business premises, or `bottle clubs,' if such regulation is directed to the goal of protecting the safety and welfare of county residents and if the classification of such establishments is not done in an arbitrary or unreasonable manner. In addition, a noncharter county may but is not required to levy an occupational license tax upon businesses pursuant to Ch. 205, F.S., so long as the requirements of s 205.033(1)(a), F.S. are satisfied.
Sincerely,
Jim Smith, Attorney General
Prepared by: Gerry Hammond, Assistant Attorney General